IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LISA M. MCDUFFIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 21-0047-MU |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa M. McDuffie brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 17 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 18. Upon consideration of the administrative record, McDuffie's brief, the Commissioner's brief, and the arguments made at oral

argument, it is determined that the Commissioner's decision denying benefits should be affirmed as set forth herein.[1]

## I.  PROCEDURAL HISTORY

McDuffie applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on May 17, 2019, alleging disability beginning on September 28, 2018. (PageID. 188-197). Her application was denied at the initial level of administrative review on July 22, 2019. (PageID. 93-138). On August 19, 2019, McDuffie requested a hearing by an Administrative Law Judge (ALJ). (PageID. 140-142). After a hearing was held on July 9, 2020, the ALJ issued an unfavorable decision finding that McDuffie was not under a disability from the alleged onset date, September 28, 2018, through the date of the decision, July 28, 2020. (PageID. 56-78). McDuffie appealed the ALJ's decision to the Appeals Council, and, on December 3, 2020, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (PageID. 50-54).

After exhausting her administrative remedies, McDuffie sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on July 23, 2021. (Docs. 11, 12). Both parties filed briefs setting forth their respective positions. (Docs. 13, 14). The Court conducted oral argument on November 18, 2021. (Doc. 19).

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Docs. 17,18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## II.  CLAIM ON APPEAL

McDuffie alleges that the ALJ's decision to deny her benefits is in error because the ALJ's Residual Functional Capacity (RFC) determination at the fifth step of the sequential evaluation process was not supported by substantial evidence. (Doc. 13 at p. 2; PageID. 552).

## III. BACKGROUND FACTS

McDuffie, who was born on August 8, 1979, was almost 40 years old at the time she filed her claim for benefits. (PageID. 188, 192). McDuffie initially alleged disability due to seizures, migraines, major depressive disorder, and anxiety disorder. (PageID. 217). McDuffie completed either 10th or 11th grade of high school in May of 1997. (PageID. 83, 218). She did not attend special education classes. (PageID. 218). She has worked as a caretaker at an assisted living facility and as a private sitter. (PageID 34-35, 218). She has also worked previously as a retail store assistant manager, an overnight stocker, and a house cleaner. (*Id.*). She stopped working on September 28, 2018. (PageID. 217). She testified at the hearing that she can no longer work because of her depression, which causes her to have no drive, and her anxiety, which causes her to be angry and agitated. (PageID. 84).

In her Function Report, which was completed on June 11, 2019, McDuffie stated she can handle her own personal care without reminders, except reminders to take her medicine; that she takes care of her 13 year old daughter and a pet; that she cooks simple meals daily and makes complete meals three times per week; that she can do housework and laundry; that she only goes out for groceries, appointments, and to take her daughter or godson somewhere; that she can pay bills, count change, handle a savings account, and use a checkbook and money orders; that she doesn't

3

spend time with others because she gets annoyed and angry at the sight of most people; that she has a hard time paying attention for a period of time because she gets distracted; that she cannot finish what she starts; that she tries not to deal with authority figures, but can be polite if they are polite; that she can follow written instructions pretty well, but is not so good at following spoken instructions; and that she does not handle stress or changes in routine well. (PageID. 230-37). She testified at the hearing that, when working in retail, she got into a verbal altercation with a supervisor and verbal altercations with customers and would have to walk away before the altercations became physical. (PageID. 86-87). At the time of the hearing, she was on medication for depression and had just started taking medication for anxiety. (PageID. 85).

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ determined that McDuffie had not been under a disability from the alleged onset date, September 28, 2018, through the date of the decision, July 28, 2020, and thus, was not entitled to benefits. (PageID. 74). At step one of the five-step sequential evaluation, the ALJ found that McDuffie had not engaged in SGA since September 28, 2018, the alleged onset date. (PageID. 61). Therefore, he proceeded to an evaluation of steps two and three. The ALJ found that, during the relevant period, McDuffie had severe impairments of major depressive disorder, anxiety disorder, psychogenic non-epileptic seizures, and migraine headaches, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID. 62-65). After considering the entire record, the ALJ concluded that McDuffie had the RFC to perform medium work, except that she was limited to a medium level

4

of exertion from a lifting and carrying perspective; cannot climb ladders, ropes, or scaffolds; cannot work at dangerous heights, around machinery, or in temperature extremes; cannot operate automotive equipment at work; can understand, remember, and carry out unlimited short and simple instructions; can occasionally understand, remember, and carry out detailed instructions; can occasionally interact with the general public, coworkers, and supervisors; and can experience occasional changes in routine work setting. (PageID. 65-72). After setting forth her RFC, the ALJ determined that McDuffie was unable to perform any past relevant work. (PageID. 72-73).  However, considering her age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that McDuffie could perform, and therefore, found that McDuffie was not disabled within the meaning of the Act. (PageID. 73-74).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The steps are to be followed in order, and if it is determined that the claimant is disabled at a step of the evaluation process, the evaluation does not proceed to the next step.

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the

facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

McDuffie alleges that the ALJ's decision to deny her benefits is in error because the limitation to occasionally understanding, remembering, and carrying out detailed instructions is inconsistent with his finding that she has moderate limitations in her ability to understand, remember, and apply information and moderate limitations in her ability to concentrate, persist, and maintain pace. (PageID. 5-8). She also argues that this finding in the RFC is not supported by substantial evidence. (*Id*.).

As to McDuffie's first argument, the Court finds the opinion in *Givan v. Colvin*, Civ. A. No. 11-00508-B, 2013 WL 1296241, at *13-14 (S.D. Ala. Mar. 27, 2013) instructive. In *Givan*, the ALJ's RFC assessment limited the plaintiff to light work with some additional limitations, including a finding that the plaintiff could understand, remember, and carry out only short, one and two step instructions and tasks on a frequent basis and detailed instructions only on an occasional basis. *Id.* at *13. The Court found that these mental limitations were consistent with the State Agency psychologist's assessment that found no severe mental impairment but moderate limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended periods. *Id.* This Court agrees that a finding of moderate limitations in McDuffie's ability to understand, remember, and apply information and moderate limitations in her ability to concentrate, persist, and maintain pace does not prohibit a

7

finding that she could understand, remember, and carry out detailed instructions only on an occasional basis.

McDuffie also argues that the ALJ's finding that she could understand, remember, and carry out detailed instructions only on an occasional basis was not supported by substantial evidence. A review of the medical records shows, *inter alia,* the following: 1) Dr. Kilgo and Dr. Soh, neurologists, found on exam of McDuffie's "higher integrative functions" on three visits in 2018 and 2019 that she was awake and alert; oriented to time, place, and person; was fluent and appropriate at repeating and following commands; had normal knowledge (e.g., current events, past history, vocabulary); had normal concentration and attention; and had normal recent and remote memory; 2) during an admission for evaluation of seizures in March of 2019, Dr. Naritoku and Dr. Rini found that McDuffie was alert, attentive, and oriented; her speech was clear and fluent with good repetition, comprehension, and naming; she was able to demonstrate good judgment and reason, without hallucinations, abnormal affect, or abnormal behaviors during the exam; and she was not suicidal; 3) when seen at AltaPointe on April 4, 2019, it was noted that her behavior was normal and cooperative; her mood and affect was normal, but sad; she had no speech impairments; her perception was within normal limits; her memory was impaired; her thoughts were logical, coherent, and within normal limits; her concentration was impaired; her orientation was within normal limits; her insight and judgement were fair; and she had moderate anxiety; 4) when seen by a therapist at AltaPointe on April 17, 2019, it was noted that her behavior was normal and cooperative; her mood and affect were sad; she had no speech impairments; her perception was within normal limits; her memory was unimpaired; her thoughts were logical, coherent, and within normal

limits with some racing thoughts; her concentration was not impaired; her orientation was within normal limits; her insight and judgement were fair; and she had moderate anxiety; 5) on her visit to AltaPointe on May 16, 2019, it was noted that she was alert, attentive, and oriented, calm, and cooperative; her speech was normal; her thoughts were linear, logical with no delusions; her mood and perceptions were normal; her insight and judgment was fair; her short term, recent, and remote memories were intact; her attention and concentration were intact; her knowledge was intact and intelligence appeared normal; she reported that she had anger issues, irritability, and mood swings that she attributed to anxiety and was easily annoyed by others; 6) on her visit to AltaPointe on May 29, 2019, it was noted that her behavior was normal and cooperative; her mood was normal and her affect was appropriate to the situation; she had no speech impairments; her perception was within normal limits; her memory was unimpaired; her thoughts were logical, coherent, and within normal limits with some racing thoughts; her concentration was not impaired; her orientation was within normal limits; her insight and judgement were fair; and she had mild anxiety; 7) on her visit to AltaPointe on August 14, 2019, she had a new therapist who noted that her behavior was normal and cooperative; her mood was normal and her affect was appropriate to the situation; she had no speech impairments; her perception was within normal limits; her memory was impaired; her thoughts were logical, coherent, and within normal limits with some racing thoughts; her concentration was impaired; her orientation was within normal limits; her insight and judgement were fair; and she had severe anxiety; 8) in a note in the Alta Pointe records on September 30, 2019, it was noted that McDuffie had cancelled the appointments scheduled since the August 14, 2019 visit, reported that she was doing "okay," and had not been compliant with treatment,

including medications, since August; 9) in a Mental Residual Functional Capacity Questionnaire dated November 22, 2019, Jane Larrimore Crooke, one of the therapists who treated McDuffie at Alta Pointe, opined that she had a mild impairment in understanding, remembering, and applying information, a moderate impairment in concentration, persistence or pace, and a mild impairment in understanding, carrying out, and remembering instructions; 10) on her visit to AltaPointe on November 22, 2019, it was noted that her behavior was normal and cooperative; her mood was normal and her affect was appropriate to the situation; she had no speech impairments; her perception was within normal limits; her memory was impaired; she had racing and obsessive thoughts; her concentration was impaired; her orientation was within normal limits; her insight and judgement were fair; she had severe anxiety; and she reported to the therapist that she had been doing "a lot better;" 11) on her visit to AltaPointe on December 23, 2019, it was noted that her behavior was normal and cooperative; her mood was normal and her affect was appropriate to the situation; she had no speech impairments; her perception was within normal limits; her memory was impaired; she thoughts were logical, coherent, and within normal limits with some racing and obsessive thoughts; her concentration was impaired; her orientation was within normal limits; her insight and judgement were fair; and she had severe anxiety; 12) at a visit with her neurologist on March 15, 2019, the doctor noted that she was oriented to time, place, and person; her recent and remote memory were normal; her attention span and concentration was normal; her language skills – naming, repetition, and spontaneous speech were normal; and her fund of knowledge was normal; 13) on April 3, 2020, via telephone call with her therapist at AltaPointe, it was noted that McDuffie was polite and cooperative but her anxiety was at an all-time high due to a

pending criminal charge; 14) on April 15, 2020, via telephone call with her therapist at AltaPointe, it was noted that her behavior was normal and cooperative; her mood was normal and her affect was appropriate to the situation; she had no speech impairments; her perception was within normal limits; her memory was impaired; she had racing and obsessive thoughts; her concentration was impaired; her orientation was within normal limits; her insight and judgement were fair; and she had severe anxiety; 15) on April 21, 2020, via telephone call with her therapist at AltaPointe, it was noted that her behavior was normal and cooperative; her mood was normal and her affect was appropriate to the situation; she had no speech impairments; her perception was within normal limits; her memory was unimpaired; she had racing and obsessive thoughts; her concentration was not impaired; her orientation was within normal limits; her insight and judgement were fair; and she had moderate anxiety; 16) on May 5, 2020, via telephone call with her therapist at AltaPointe, it was noted that her behavior was normal and cooperative; her mood was normal and her affect was appropriate to the situation; she had no speech impairments; her perception was within normal limits; her memory was unimpaired; she had racing and obsessive thoughts; her concentration was not impaired; her orientation was within normal limits; her insight and judgement were fair; and she had severe anxiety related to her upcoming court hearing. (PageID. 290-550).

The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). It represents ***the most, not the least***, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). Having reviewed and considered the medical records and other evidence in the record, the Court finds that substantial

evidence supports the ALJ's finding that McDuffie could occasionally understand, remember, and carry out detailed instructions. The medical records do not include objective findings or other evidence that indicates that her mental abilities were more limited than provided for in the ALJ's RFC.

Even if the ALJ erred in his assessment that McDuffie could occasionally understand, remember, and carry out detailed instructions, such error would be harmless because the jobs actually identified by the Vocational Expert and included in the ALJ's decision were all jobs that are classified as unskilled work. Unskilled work involves work that needs little or no judgment to do simple duties that can be learned on the job in a short period and understanding, remembering, and carrying out simple instructions. The evidence clearly supports a finding that McDuffie could perform jobs involving work that needs little or no judgment to do simple duties that can be learned on the job in a short period and understanding, remembering, and carrying out simple instructions.

## VI. CONCLUSION

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the entire transcript and considered the arguments made by McDuffie, the Court finds that the ALJ's determination that McDuffie was not disabled is supported by substantial evidence and based on proper legal standards.

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **22nd** day of **June, 2022**.

s/P. BRADLEY MURRAY  
**UNITED STATES MAGISTRATE JUDGE**